FTC's Crucial Error in its Denial of the Board's Motion to Dismiss, and that is, the FTC's refusal to accept the sufficiency of the supervision provided by the State of Louisiana over the Board's repromulgation and enforcement of its replacement Rule 311.01. That rule, under a requirement of the State AMC Act, implements the mandate of the Federal Dodd-Frank Act and federal financial regulations that AMCs, appraisal management companies, must pay customary and reasonable fees for certain residential appraisals. I'd like to focus on three points. The first point is, the active supervision provided by the State meets and exceeds the Mid-Cal test of the Supreme Court and the constant requirements of North Carolina Dental. Before you get too much into the merits, which we want to hear, of course, the FTC says there's no jurisdiction because the statute allowing appeals directly to courts of appeals covers cease-and-desist orders. Does anyone want to address that briefly? I'm curious if you have any cases in which an appeal was allowed that didn't involve a cease-and-desist order. Your Honor, I have several answers for that. The first is that certainly the order under appeal here meets the standards of the collateral order doctrine under Cohen and under this question you've asked specifically. I guess the question becomes whether that cease-and-desist order statute incorporates the collateral order doctrine. Your Honor, it does for several reasons. First, if you look at the cases that are cited in our brief and in the government's brief from the Supreme Court and from the courts of appeals, they all considered interim orders of the FTC under the collateral order doctrine. However, they found that they did not meet the standards of the Cohen factors. None of them, however, found that they lacked the jurisdiction to consider the question. That's first. Second. It's helpful if they're multiple, just cite the one that's most on point. So there are several. I think the one that's clearest, I think, is FTC v. Standard Oil as a Supreme Court case. Was that an APA case? Your Honor, as I stand here, I'm not sure whether it was an administrative proceeding case. I believe that it was, but there were several other administrative proceeding cases, including the case that came before this Court in Texaco v. FTC. Okay. Do you have any other circuit case that has considered an appeal from an FTC order that wasn't a cease-and-desist? Your Honor, we cite several of them in our briefs, and I'm happy to provide you a supplemental memorandum on the point, but we do cite several of them in our briefs. And, of course, there's the statement of the Third Circuit in Chahaza, which says that, you know, it's uniformly accepted by the courts of appeal that all agency interim decisions are permitted to be appealed under the collateral order doctrine. The difficulty just is textual, right? The FTCCA statute, the judicial review provision, is focused on a cease-and-desist order. Explicitly. Explicitly. So Your Honor, two points on that. The first is that the collateral order doctrine is a practical construction of what it means to be final. Now, the only final order that the FTC can issue in its own administrative proceeding is a cease-and-desist order, and so it's the statement, we're saying, final order. And uniformly, the cases on the collateral order doctrine hold that, as a practical construction, collateral order doctrine appeal applies. The second point is that if you – now, the SEC – Well, on that point, though, the collateral order – give me a little history on that. Is that an emanation just of a practical necessity, or is that all tied to 1291, which itself is explicit as to final orders of district courts? So a broad-term final order that then gets definition in the collateral order doctrine, but still Congress saying as to district courts. And then we jump, as to each administrative agency, to a different judicial review statute. And it just so happens, for the FTC, it seems to be Congress telling us textually just this one creature. Well, Your Honor, again, this is the only creature that can be a final order of the FTC. There are no other final orders that the FTC can issue. So it is really the same thing as saying a final order. But can't you also invoke the APA to review certain FTC actions? You have to go to the district court, not straight to us. Correct. It could be invoked, but that's not necessarily the case. So if I can refer you to, also, the Eleventh Circuit's recent decision in LabMD versus the FTC, where they review the two separate procedures, either under the FTC Act, bringing an action before the FTC, or the FTC bringing an action before the district court. And they say that as a matter of due process and fundamental fairness, you have to review the two of them as if they were equivalent. Now, there's no question that the interim order of the district court could be appealed on a collateral order basis. The same has to be true, also, here for the collateral orders issued by the, for the interim orders issued by the FTC that meet the standards of the collateral order doctrine. It's a tough argument, counsel. Your Honor? That's why we have a first-class lawyer making it, right? Well, Your Honor, one additional point, which I think goes also to the Eleventh Circuit's argument, which is that if you disallow collateral order appeals in this case from the administrative proceedings brought by the FTC, the FTC will be allowed to impermissibly forum shop. They will simply bring every case against the State Board before the FTC itself, and that way they would be able to avoid collateral order review of a denial of state action immunity. But that wouldn't be true if the APA provided a route for, because APA says final order, I think not our circuit, but a number of courts have said the APA does incorporate the collateral order doctrine, so that would be a potential avenue. Well, but Your Honor, I think we would be faced with the same argument, however. They would say that, no, no, the APA cannot apply to this, to this particular type of order because this is something in our administrative procedure, there's a specific statute that addresses it. So I think we'd be in the same place, and I think the, the same principles that I've already articulated for you apply. It is the equivalent of a final order and a practical construction of the final order doctrine to say that interim orders that are applicable to the collateral order doctrine can be appealed, uh, on a collateral order basis. Are Parker... Sorry, go ahead. Are Parker immunity decisions really that separate from the merits? Uh, well, this court has found that they are, Your Honor. If you look at Martin v. Gulf Court Hospital, there's a specific finding that it meets the standard of the collateral order review doctrine. And is, is there any disagreement on other circuits, or is... Well, there are some, there, there is a split among the circuits as to whether, uh, whether, uh, state action immunity denials are appealable on a collateral order basis. This, this court is among a few circuits that hold that it does, that are a few circuits that hold that it does not. And as I, we mentioned our briefs, it was before the Supreme Court last year in a case that was dismissed, so it was never decided, even after it was fully briefed. It does seem to me your argument on the merits, which is basically, I think, in part, that maybe there needed to be more factual development. The FTC threw this defense out too soon. It does seem to me intent, intention with the idea that this is just a, an immunity to suit that has to be decided early on and that, that is subject to the collateral order. Well, Your Honor, that argument really pertains only to the motion for partial summary decision. It does not pertain to the denial of the motion to dismiss, which, which I think is the main point here, because that is fully dispositive of this case. What is the current proceeding? What is happening? Because this ruling was back in April, right? It was April 10th. The proceeding was stayed by this Court. State, we, we first petitioned for a stay to the FTC, which denied it. This Court granted the stay. So, that's my three points. You still have eight minutes. That's, that's okay. So, let me, let me get to the, the key aspect of this. The question in this case is really not whether the board was supervised by the state, but rather whether the board was supervised enough. Now, the FTC admits in its brief that active supervision is not an end unto itself. It is an evidentiary function. It serves the evidentiary function of showing whether the actions of the board promote the actions and the policies of the state. And here, they also concede that one supervisor would be enough. Here, there are multiple layers of supervision. There's supervision by the state and the proposed rule and its rulemaking record, and determined that the rule should go forward, and no hearing was necessary for them to make that determination. Again, just on chronology, because I got confused with the repromulgation and the revisions. When you received the adverse ruling you did, was that having considered the latest round of revisions? So, so, do you understand my question? Yes. So, the order of the FTC addresses the repromulgated replacement Rule 311-01. Which is the final one. There haven't been further tinkerings. There has been no further rules since then, Your Honor. Thanks. There's been no further rulemaking since then. So, if there's any doubt as to the intent of the state and whether the state took accountability for the actions of the board, it's dispelled by the Senate Resolution 117, which passed unanimously and concludes that the promulgation and repromulgation of the board's Rule 311-01, quote, were the sovereign acts of the state of Louisiana and its legislature. Close quote. The governor also issued an executive order specifically to shore up active supervision and therefore guarantee the board state action immunity. So that executive order, 17-16, it's entitled Supervision of Louisiana Real Estate Appraisers Board Regulation of Appraisal Management Companies. And it states its intention to sweep away the antitrust questions that were preventing the board from performing its mandate under state law and under the federal Dodd-Frank Act. So they established two additional layers of supervision under the executive order. The first is that the commissioner of administration reviewed the rule and its rulemaking record and reached a determination that the rule promoted state policy. Second, it established supervision over enforcement by an administrative law judge who would provide a prior review of every discretionary enforcement action to be taken by the board. So these acts of supervision meet the constant requirements of North Carolina Dental. None of the supervisors is an active market participant. They performed an actual review. The review was substantive, not merely going to procedure. And all of them have the power to approve, to modify, or to reject the proposed action of the board. Now, these cases also stand, I mean, this case stands 180 degrees from the cases decided by the Supreme Court that rejected state action immunity. The facts here are quite unique. So, for example, in North Carolina Dental and in MidCal itself, the state had no procedures for supervisory review and no supervisory review was performed. In Tycor and also in this court's case in Veritex v. Bonin from last year and in Earls, footnote number 10 from this court, the procedures existed, but they were not followed by the state. Here, the supervisory provisions were, in fact, in place and were followed to the letter by the Senate and House Commerce Committees and by the COA. And full supervision is in place for the administrative law judge as well. So, the FTC based its erroneous conclusions on three guidelines of its own invention that have never been accepted by the Supreme Court or any other appeal court to our knowledge and that micromanage the administrative functions of the state in its supervisory capacity. And those guidelines are referred to in 1372 and 1373 of the record. This is contrary to, and cannot be squared with, the Supreme Court's admonition that active supervision is to be measured on a flexible and context-dependent basis. Is our best sort of statement of what that whole framework is, the North Carolina Dental, is it Veritex or what's our best sort of description of that context-specific test? North Carolina Dental, in fact, active supervision was not at issue in the case at all. However, it contains a very comprehensive discussion of what active supervision requires. So, I'd say North Carolina Dental plus the nature of active supervision that's required and the flexible context-dependent analysis. So, let's look at the context here. The three guidelines are, you're supposed to hold a hearing, you're supposed to perform a quantitative and qualitative analysis, and you're supposed to write a lengthy opinion that explains the reasons. Well, let's look at the context. Here, the Senate and the House Commerce Committees had first passed the law, the AMC Act, in 2012 that first required the payment of customary and reasonable fees, and they held hearings before they did it at that time, and they empowered the board to create the rules that would implement the general rule. In 2013, the board held three rounds of public comments, two rounds of hearings, provided the full record to the Senate and House Commerce Committees, and they decided, based on that record, no further hearing was necessary. The rule comported with state law and should go forward. In 2016, those committees again considered the customary and reasonable fee rule when they amended the AMC Act in 2016 to conform to recently passed federal regulations. And then in 2017, in the face of the FTC's complaint and with the executive order of the governor in place, they again considered the actions of the board, the board's proposed rule and the board's proposed rulemaking record, and determined no hearing was necessary. They understood the issues thoroughly well. They'd considered it four times, five times over the last seven years. And therefore, it should go forward. A quantitative analysis makes no sense here because there are no quantitative elements to Rule 311-01 or to the AMC Act itself. And the only qualitative review that makes sense is the one they actually performed, and that is to review whether the acts of the board conform and promote the policies of the state. And lastly, state action immunity should not depend on how enthusiastically a state supervisor expresses its opinion and its decision that the actions of the board conform to state policy. It cannot be that a state can be held liable for an antitrust violation merely by expressing its supervisory decisions in a concise manner. The FTC also erred in its assessment of the scope and standards of the ALJ's review. It's clear from the contract with the ALJ and the board and from the board's statement of policy at page 232, every discretionary action of the board will receive a prior review from the ALJ. The standard of review applied by the ALJ also suffices for active supervision because it is a de novo review of the law and policy. They are the fact finder. They reach a determination as to whether there's a preponderance of the evidence. And lastly, with respect to the discretion of the board as to remedy, that remedy discretion already is cabined by the legislature which has defined the scope of remedies that would comport with state policies. The decision then where within that range the proposed remedy would fall is assessed by the ALJ accordingly and appropriately under the typical standards applied to such discretionary decisions, that is for arbitrary and capriciousness. Your Honor, I will reserve the rest of my time. Thank you. Unless there are additional questions from the court at this time. Is it pronounced Hegedus? Hegedus, yes. May it please the court. I'm Mark Hegedus for the FTC. The court lacks jurisdiction to hear this petition under the FTC Act which allows appeals only from cease and assist orders. And even if the collateral order doctrine applies, it does not permit this appeal as this court sitting en banc in Surgical Care Center recognized the state action doctrine defines the reach of the Sherman Act and is not an immunity like the 11th Amendment. With respect to the state action merits, if the court reaches them, it should affirm the commission. The Louisiana State of Louisiana has not clearly articulated a policy to displace competition in the setting of appraisal fees and the layers of state supervision over the board's conduct are only potential supervision which have not been shown to be active supervision in fact as required by the Supreme Court. If we weren't to see that the collateral review doctrine allows review here if we were to agree with you, would that be inconsistent with any other circuit authority and specifically the First Circuit's decision in the Rhode Island case? Your Honor, I'm afraid I didn't hear the first part of your question. If we agree with you and say that we don't have, the judicial review statute here doesn't allow us to hear this matter, would that be inconsistent with any other circuit authority, especially the First Circuit's case in the Rhode Island v. EPA matter? Well, the Rhode Island v. EPA matter involved the EPA and certainly not the Federal Trade Commission. But in addition, the 11th Circuit, for example, has indicated that collateral order doctrine could apply to State action cases. But there are other circuits such as the 9th, the 4th, and the 6th that have held that the collateral order doctrine does not apply to claims arising under the State action doctrine. That's broadly as to across various statutes, but do we have one on the FTCA and that explicit language, cease and desist? Is your position that that's the determinative language or that there can't be collateral review doctrine of any agency matters? Oh, it is not the latter position. We do not take the position that the collateral order doctrine does not apply to agency matters or agency generally. So you're saying it's statute-specific? It is statute-specific. And that is consistent with the principle that subject matter jurisdiction is defined by statute. So you need to look at the statutory language. The Cohen decision itself by the Supreme Court is an examination of the language final decision. In cases where there has been collateral order doctrine review permitted with agencies, you have similar language, such as final agency action. The words in the FTC Act, as chosen by Congress, are cease and desist order. And the Commission's decision here is not a cease and desist order. But if courts are putting this gloss on final district court decision or final agency action, I mean, an interlocutory appeal, it's not final, the order being appealed. Why shouldn't, in an administrative situation, courts also make what has been called the pragmatic position of allowing certain interlocutory orders to be appealable? Right. Certainly the court should approach this in a pragmatic manner. But you can't ignore the words. And the words in the FTC Act are very specific, going to cease and desist. You could say that with 12, the words are very specific, final district court decision. But then in that case, Your Honor, you have the concept of a final decision concluding conclusively with respect to some issue that that issue is wrapped up for purposes of that court. And so going up to the appellate court does not result in piecemeal review. In this case, in turning to whether or not, if the collateral order doctrine does apply, whether it would be appropriate here, this case there would be, there's an inherent relationship between the question of state action doctrine eligibility and the merits of the case. An example of that is the clear articulation prong of the state action, the prong, clear articulation prong is focused on what did the Board do and was the Board's conduct foreseeable under the State policy. So there is a dispute about what exactly the Board did. And that dispute's going to be worked out in the course of the Commission's proceedings if they're allowed to continue again. It may be that other courts elsewhere have said this, the Parker immunity doctrine goes more towards Sherman Act liability, but I think the citation to Martin is correct that our Court has spoken to it as an immunity doctrine. Your Honor, the Court did help, the panel held that in Martin. But following Martin, this Court sitting on Bonk in the Surgical Care Center case described the state action doctrine as not so much an immunity, but describing the reach of the antitrust laws. And it said that policy underlying state action doctrine from Eleventh Amendment immunity, it said that the state action doctrine had a parentage different from absolute or qualified immunity. What seems compelling, I mean, we don't often get amici briefs, and here we do have amici coming in, it seems like the collateral order doctrine and the state immunity would be particularly vital to either vindicate or resolve quickly in this litigation, as opposed to having a long uncertainty period, especially when the question could implicate multiple licensing boards. Why not just get to it and resolve it? Your Honor, that could be said about a number of areas where judicial efficiency in terms of getting a question resolved quickly is of interest, and yet the Supreme Court has limited collateral order review to just a few specific areas such as Eleventh Amendment immunity, absolute immunity, qualified immunity, double jeopardy. It doesn't apply in cases involving claims of attorney-client privilege. It doesn't apply where there's a denial of motion to dismiss. So there are other instances where it would be helpful to have everything wrapped up quickly, but the Supreme Court has refused to apply the collateral order doctrine in those cases. If we do reach the issue, you're not in any way arguing that there should be a remand because some of the reforms that have been instituted are post-State the Commission's ruling, are you? The issue is before us. The issue is before you. The collateral order doctrine question comes up with respect to the ruling on the Commission's decision dismissing the State action defenses for the conduct alleged in the complaint. So it's for the pre-complaint period. A remand would still be necessary in terms of whether or not the new provisions, the post-complaint changes to the supervisory regime could satisfy the State action doctrine. So the Commission has said, at least in terms of what they have seen so far, those have not been shown to satisfy the State action doctrine. But the Commission has also indicated that in terms of a going forward supervisory regime, the changes could be examined as part of the remedy portion of the hearing before the Commission to work out some kind of State action proviso. So there would be a necessity to send this case back to the Commission if this Court were to reverse on the Commission's ruling on the State action defenses as they apply to the conduct alleged in the complaint. If I could just return quickly, though, to this Court's ruling, Martin, and then the observations, the conclusions in the surgical care center case, and then finally, I'd like to... I have a question about that. You're trying to say the en banc decision in surgical care, and I know the language you're relying on basically overruled Martin, but surgical care wasn't a collateral order case. And how do you deal with cases, I think like acoustic, which were post surgical care that still applied our collateral order ruling in Martin? Your Honor, we don't take the position that surgical care actually overruled Martin. We recognize that. But in terms of... How are we not bound by Martin, then? Because Martin applied the collateral order doctrine to a local government, a municipality. The acoustic systems case declined to extend Martin to a private defendant, for many of the same reasons that we urge today, that the collateral order doctrine should not be extended to the Board, because under North Carolina Dental, the Board is made up of... It's controlled by market participants, and as the Supreme Court said in North Carolina Dental, that kind of Board is closer to a private trade association than it is to a local government. And so the decision in surgical care would support a decision on the part of this Court not to extend Martin, not to apply Martin to this case. And the Court can leave to another day whether the reasoning in surgical care suggests that Martin itself should be overturned. But that question does not have to be addressed today. If I could, Your Honor, I'd like to turn to the active supervision prong of the State Action Doctrine, turning to the merits and address some of the reasons why the FTC concluded that the provisions for oversight here are not sufficient. And that largely has to do with the fact that, at best, the oversight of various actors in the State of Louisiana has only been shown to be potential supervision. There is not yet a record of the overseers actively actually using their oversight authority to engage in the kind of oversight that is required under Supreme Court precedent. And I think, as this Court very aptly described in its recent Veritex decision, it contains an excellent summary of the requirements of the active supervision prong, including the fact that active supervision might involve establishing prices. It could involve a look at the terms of a contract. It could involve monitoring market conditions or engaging in a pointed reexamination of the policy or of the conduct. You have North Carolina Dental at the beginning, where there's no structure to supervise at all. And that seems to be the origin of this doctrine. And then you have, this is how I look at it, but tell me if I'm oversimplifying. Then you have Louisiana's initial effort, which largely delegates the relevant issue to the, was it SMU, the academic policy? Yes. So those are analogous. Now what it seems Louisiana's done is, thanks to your intercession, they've completely revised it. And on paper, they have quite a robust structure of review. So is the position that you're urging that it's not whether that overview structure exists on paper, but instead you've got to demonstrate examples where it's actually happened? Is that where the law has now moved? Yes, Your Honor. And in fact, the law was in that position even before NC Dental. In the Tycor case, the Supreme Court looked at whether or not the supposed supervisors in that case, in fact, had exercised their supervisory authority. So the Commission, when looking at the Commission on Administration's review provisions, they ruled based upon the fact that the Commission on Administration had not shown that he, in fact, engaged in kind of the substantive pointed reexamination that is required under a long string of Supreme Court precedent. To give an example, the Board put together this package of materials and gave them to the Commission on Administration. The Commission on Administration then sent back a letter saying this looks consistent with the policy and so the rule can go into effect. But what happened in between the submission and that conclusory letter is completely unknown. And the act of supervision requirement is, as the Supreme Court has observed, is it performs an evidentiary function. It's a way for reviewing courts to satisfy themselves that the State, in fact, has looked at the details of the policy, has looked at the details of conduct, and concluded that it is consistent with a State policy to displace competition. So if it depends on whether this new regime is in actuality creating more supervision, why was it appropriate to throw out the defense in its entirety rather than allow for further factual development? Your Honor, the defenses that were dismissed pertain only to that period of time covered by the complaint. And during that time, there was no Commissioner on Administrative Law review. All there was was the review by the Legislature and the Governor, which at best was potential review. Neither of those sets of reviewers, in fact, took any action to reject or approve. Was the complaint challenging current practices of the Board? The complaint challenged, well, it certainly challenges the current  practices of the Board. The complaint was filed. In the course of the proceeding, the Board will be permitted to introduce evidence that these new measures, in fact, provide active supervision. And that's why we state in our brief that even if this Court were to affirm the Commission with respect to the State Action Defense dismissals, the Board is still going to be able to make arguments that as part of a remedy, if the Commission even concludes that there's been a violation of the FTC Act, that as part of the remedy, there is a State Action Regime that can provide adequate or active supervision. It sounds all that we're freeze-framing something that is a very different creature than what exists now. So if we reach the issue, it sounds like your argument is saying, well, they may have done a lot that's given a much more robust structure, but that's not before you, but we acknowledge it's all happened. That is correct, Your Honor. I mean, the ruling before you is based upon the motions that were filed before the Commission. And the complaint counsel's motion covered only the pre-complaint conduct. The Board's motion covers only the post-complaint changes. Those post-complaint changes might have a clear articulation of State policy, the first prong. Right, but the Commission specifically decided not to rule on that basis because they were able to dispose of the case on the active supervision prong, as courts frequently do, ruling only on one of the two prongs, the one that they can rule on readily. But as I have mentioned, the Board is going to have this opportunity to make a record that the new provisions such as COA review or division on administrative law review is sufficient. The Commission's conclusion that they currently are not is correct. And one example of that is as follows. The Commission on Board, a rulemaking record that the Board itself created. There was a hearing presided over by the Board itself. The hearing included an opportunity for members of the public to offer comments. One of the entities that offered the comments was the Real Estate Valuation Advisory Association. And they raised comments that the issued rule was more restrictive than what Dodd-Frank permitted. And in fact, because in fact it's more restrictive than what this Louisiana state statute permits, in that the Louisiana state statute implemented verbatim the federal standard. The Board's rule, however, is the allegation and the complaint, and the concern of the Real Estate Valuation Association was that it's more restrictive. The Commissioner on Administration acknowledged that that concern was raised. The Commissioner on Administration deemed the concern significant, and then the Commissioner on Administration refused to make any decision as to whether or not that concern was valid, whether or not the Board's rule should be modified to address that concern. Could you just save a teeny bit of time for the amici arguments? Because it does concern me that if we reach the issue and we say this isn't enough active the Supreme Court frequently hears that in antitrust cases involving professional boards. And the Supreme Court consistently, both in North Carolina Dental and the Patrick B. Burgett case, said we don't relax the standards simply because a professional board is involved.  state action protection, the Supreme Court should for a regulatory regime, the Supreme Court has set out clear standards under clear articulation and active supervision what is required. And as this Court I think recognized in either Couste existence or Veritex, those standards are stringent. And they're stringent because, first of all, antitrust laws are part of sort of the fundamental foundation of our economy. State action doctrine is and immunities based upon state action are disfavored. And so the requirements to meet that are demanding. A State then needs to actually make this conscious choice and actively supervise a regime that is intended to displace competition and allows private actors to engage in anti-competitive conduct. And so it's very consistent for us to be demanding that regard. Thank you, Your Honors. Thank you. A few quick points, Your Honors. First, to surgical care. Surgical care actually helps us in this case because it holds that state action immunity is not just an immunity. It is in fact broader than qualified immunity or other immunities that have been recognized under the collateral order doctrine. It is an affirmative limit on the power of the federal government. And that's important here because what the government is essentially asking you to do is to ignore the fact that they don't have jurisdiction because of state action immunity. Let them go ahead and issue a cease and desist order. Let them hold a hearing. Let them issue a cease and desist order. And then they can consider whether what the Board has done in November of 2017 gives them state action immunity going forward. That can't be the standard, Your Honor. Indeed, the affirmative defense that we raised was not going retrospectively. It said the Board is immune under state action immunity. It is present tense and it is something that was intended to be forward-looking as well as retrospective. Finally, with respect to the review by the COA. The COA did exactly what he was supposed to do. The Governor recognized that as true in his Executive Order 18-20 where he stated that the COA reviewed the record. He approved the rule in accordance with Executive Order 17-16. And indeed, the question that he did not review with respect to the arguments of RIVA were fully reviewed by the Board itself in the report that they submitted to the Senate, the House Committees, and to the COA. The COA was simply saying my duty under the Executive Order is to review the rule and decide whether the rule itself comports with public policy. And he found that it did. He said the question of whether the rule exceeds what's permitted by Dodd-Frank is an interesting question, but it's not my province to decide that. That's something perhaps for the Attorney General or for the courts to decide. But in fact, the rule is utterly consistent with Dodd-Frank. And as the Board's comments to the legislators and to the COA reveal, what the Board has done is precisely to grant the three avenues of compliance with the customer and reasonable fee requirements that are shown in the federal statutes and the federal regulations. Finally, Your Honor, the Supreme Court says the touchstone of the State has taken accountability for the actions of the Board. The State of Louisiana has done so here repeatedly, intentionally, unmistakably. Okay, and it has on paper, and you would say also it's demonstrated active supervision in fact, and that was before the Commission, before it entered its ruling? Yes, Your Honor. It was before the Commission because of the actions of the Senate and the House Commerce Committees in October and November of 2017, and because of the ruling of the COA in November of 2017. Because those supervisors approved the rule and found it consistent with State policy, the rule was allowed to come into effect. If any of those supervisors had said that it conflicted with the State policies, the rule could not have come into effect. Okay. Thank you very much, Counsel. Thank you, Your Honor. That concludes the cases for today in the sitting. Thank you.